# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

LORONYA HAYNES,

        Defendant.

Case No. 3:25-cr-00057-SLG-KFR

## ORDER ON REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS

Before the Court at Docket 19 is Defendant Loronya Haynes's Motion to Suppress. The Government responded in opposition at Docket 20. The motion was referred to the Honorable Magistrate Judge Kyle F. Reardon. Judge Reardon held evidentiary hearings on February 3, 2026, and February 25, 2026.[1] The parties subsequently filed written closing arguments.[2] Judge Reardon then issued a Report and Recommendation at Docket 46, in which he recommended that the Motion to Suppress be denied. Defendant filed objections to the Report and Recommendation at Docket 49, to which the Government responded at Docket 50.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district court "may accept, reject, or modify, in whole or in

---

[1] Docket 30; Docket 36.

[2] Docket 44; Docket 45.

part, the findings or recommendations made by the magistrate judge."[3]  A court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[4]

## BACKGROUND

The Court recounts the facts as presented in the Report and Recommendation and as depicted in the responding police officer's body camera video and audio recording and dash cam recording.[5]  On July 25, 2025, at just after 2:00 a.m., Anchorage Police Department ("APD") Officer Trevor Mumma was driving northbound on Boniface Parkway.[6]  Officer Mumma was driving at or around the speed limit, which was 45 miles per hour, and his patrol car was in the right lane of the two-lane roadway.[7]

As Officer Mumma approached the intersection of Boniface and 34th Avenue, which had a traffic light, he saw a silver sedan come into view from the east side of the intersection.[8]  At this point, Officer Mumma was over 200 feet from the intersection.[9]  The traffic light facing him had been green for some time, and

---

[3] 28 U.S.C. § 636(b)(1).

[4] *Id.*

[5] Docket 46 at 1-6; *see* Docket 50 at 1 (Government's Reply noting that "Defendant does not object to the recitation of facts as outlined by the magistrate judge.").

[6] Docket 35 at 9:11–14 (Transcript of February 3, 2026 Evidentiary Hearing) [hereinafter "2/3/26 Tr."]; Gov't Ex. D-2 at 0:30–50.

[7] 2/3/26 Tr. at 10:9–10; Gov't Ex. D-2 at 0:30–50.

[8] 2/3/26 Tr. at 9:22–25; Gov't Ex. D-2 at 0:54–55.

[9] *See* Gov't Ex. D-3; 2/3/26 Tr. at 64:6–8; Docket 40 at 27:19–32:14 (Transcript of February 25,

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 2 of 15

Case 3:25-cr-00057-SLG-KFR     Document 52     Filed 07/06/26     Page 2 of 15

the traffic light facing the sedan was red.[10]  The sedan entered the intersection and turned right onto Boniface in front of Officer Mumma's patrol car.[11]  Officer Mumma estimated that the sedan was traveling at about 10 miles per hour as it entered the intersection.[12]  Based on the sedan's speed, Officer Mumma believed that the sedan had not stopped at the red light.[13]  As the sedan turned right, Officer Mumma had to brake to avoid a collision.[14]

Officer Mumma activated his patrol car's overhead lights as the sedan was still navigating the turn.[15]  The sedan veered slightly into the left-hand lane at the end of the turn before it pulled over onto the side of the road.[16]  Officer Mumma stopped behind the sedan and walked over to the driver's side door; Defendant was sitting in the driver's seat.[17]  Officer Mumma introduced himself and said that the reason he had pulled Defendant over was that Defendant had "pulled out in

---

2026 Evidentiary Hearing) [hereinafter "2/25/26 Tr."].

[10] Gov't Ex. D-2 at 0:36–54.

[11] Gov't Ex. D-2 at 0:54–59.

[12] 2/3/26 Tr. at 10:1–3.

[13] 2/3/26 Tr. at 9:25–10:5, 15:12–20, 69:8–19.

[14] 2/3/26 Tr. at 10:6–10; Gov't Ex. D-2 at 0:54–59.

[15] Gov't Ex. D-2 at 0:58–59.

[16] Gov't Ex. D-2 at 0:59–1:10.

[17] Gov't Ex. D-2 at 1:18–48; Gov't Ex. D-3 at 0:00–25.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 3 of 15

front of [him] there"; that is, Defendant had failed to "yield to vehicles already in traffic."[18]

As Officer Mumma kept talking to Defendant, he noticed that Defendant was sweating, that the sedan smelled strongly of cologne, and that Defendant's breath smelled strongly of alcohol.[19] Officer Mumma asked Defendant if there was "any reason why [he was] sweating," noting that Defendant's nose was "all moist."[20] In response, Defendant frowned, rubbed his face, and denied that he was sweating.[21] Officer Mumma also asked if there was "a reason why it smell[ed] like [Defendant] just sprayed cologne," which Defendant also denied having done.[22] Officer Mumma further asked if Defendant had had "anything to drink" that day, which Defendant likewise denied.[23]

Officer Mumma then decided to administer two non-standardized field sobriety tests.[24] Officer Mumma first instructed Defendant to recite the alphabet from the letters E to P, without singing or stopping.[25] Defendant furrowed his

---

[18] Gov't Ex. D-3 at 0:27–33; 2/3/26 Tr. at 22:16–23:1, 24:6–7.

[19] 2/3/26 Tr. at 22:16–19, 25:6–9.

[20] Gov't Ex. D-3 at 1:19–23.

[21] Gov't Ex. D-3 at 1:23–28.

[22] Gov't Ex. D-3 at 1:35–42.

[23] Gov't Ex. D-3 at 2:12–16.

[24] 2/3/26 Tr. at 7:11–25.

[25] Gov't Ex. D-3 at 2:26–30.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 4 of 15
Case 3:25-cr-00057-SLG-KFR     Document 52     Filed 07/06/26     Page 4 of 15

eyebrows and appeared confused, asking twice for clarification and pausing for a few seconds in between his questions.[26] After Officer Mumma repeated the instructions for a second time, Defendant successfully completed the task.[27] Officer Mumma then directed Defendant to count backward from the numbers 69 to 54.[28] Defendant asked, "69 to what?"[29] Officer Mumma responded, "To 54."[30] Defendant paused for a few seconds with a confused expression on his face until Officer Mumma repeated the instructions.[31] Defendant then counted down from 69 to 64 and looked at Officer Mumma expectantly.[32] Officer Mumma said, "To 54."[33] Defendant then counted down from 64 to 54 without error.[34]

Officer Mumma then returned to his patrol car to run Defendant's identification and the vehicle's license plate.[35] The search results indicated that Defendant was on federal supervised release and that his underlying conviction

---

[26] Gov't Ex. D-3 at 2:30–40.

[27] Gov't Ex. D-3 at 2:40–50.

[28] Gov't Ex. D-3 at 2:50–54.

[29] Gov't Ex. D-3 at 2:54–56.

[30] Gov't Ex. D-3 at 2:56–57.

[31] Gov't Ex. D-3 at 2:57–3:02.

[32] Gov't Ex. D-3 at 3:02–3:11.

[33] Gov't Ex. D-3 at 3:11–13.

[34] Gov't Ex. D-3 at 3:13–25.

[35] Gov't Ex. D-3 at 4:00–42; 2/3/26 Tr. at 36:9–10, 36:25–37:21, 41:16–42:2.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 5 of 15

was for a firearm-related offense.[36]  As relevant here, Defendant's conditions of supervision prohibited him from committing any new criminal offenses and required him to submit to a warrantless search of his person or vehicle by a law enforcement officer "based upon reasonable suspicion of . . . a violation of a condition of supervision."[37] Although Officer Mumma did not have access to a copy of Defendant's conditions of supervision, he correctly inferred that Defendant was subject to this warrantless search condition by virtue of his federal supervisee status.[38]

After learning that Defendant was on federal supervised release, Officer Mumma requested an on-duty APD unit to assist him with the rest of the traffic stop.[39]  While Officer Mumma waited for the DUI enforcement officer to arrive, he conducted a probation search of Defendant and the sedan.[40]  Two other off-duty officers stopped to assist with the searches.[41] Officer Mumma first searched Defendant's body and found in his pants pockets a hard plastic skull with a

---

[36] 2/3/26 Tr. at 41:6–7.

[37] Docket 19-1 at 3, 5.

[38] 2/3/26 Tr. at 36:11–19, 45:6–16. The warrantless search condition was a "special" condition of Defendant's supervision, as opposed to a "mandatory" or "standard" condition. *See* Docket 19-1 at 3–5. Officer Mumma testified that he believed that, as a practical matter, federal courts impose this warrantless search condition on all individuals whose sentence includes a term of supervised release. 2/3/26 Tr. at 108:13–109:6.

[39] 2/3/26 Tr. at 42:3–7, 42:17–18.

[40] Gov't Ex. D-3 at 6:36–19:15.

[41] Gov't Ex. D-3 at 42:20–25, 47:25–48:5.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 6 of 15

removable top, which housed a small baggie of pills, and about $600 in cash.[42] The officers then searched the sedan and found multiple firearms, loaded magazines, and ammunition.[43] Defendant was arrested and charged with several state offenses, including a DUI.[44] He was not charged with any traffic violations. Defendant was later indicted in this case on a felon-in-possession charge.[45]

Defendant now moves to suppress the evidence seized from his person and the vehicle on July 25, 2025, as well as the statements he made to law enforcement following his detention.[46] He maintains that (1) the traffic stop was not supported by reasonable suspicion of a traffic violation; (2) the extension of the traffic stop so that Officer Mumma could conduct a probation search violated the Fourth Amendment; and (3) Officer Mumma lacked reasonable suspicion to conduct a probation search.[47]

The Government disagrees, maintaining that "the initial traffic stop was lawful, the officer developed reasonable articulable suspicion of a DUI upon

---

[42] Gov't Ex. D-3 at 7:20–10:00; Docket 20-1 at 3.

[43] Gov't Ex. D-3 at 11:45–19:15; Docket 20-1 at 3.

[44] 2/3/26 Tr. at 53:17–54:12. The Court takes judicial notice of the docket records in Defendant's related state criminal case, *State of Alaska v. Haynes*, Case No. 3AN-25-04679CR. *See* Fed. R. Evid. 201; *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) ("Materials from a proceeding in another tribunal are appropriate for judicial notice." (internal quotation marks and citation omitted)).

[45] Docket 2.

[46] *See generally* Docket 19.

[47] Docket 19 at 6-12.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 7 of 15
Case 3:25-cr-00057-SLG-KFR   Document 52   Filed 07/06/26   Page 7 of 15

contacting [Defendant] justifying an independent investigation, and therefore the probation search of his person and vehicle was permitted."[48]

In the Report and Recommendation, Judge Reardon recommended that Defendant's Motion to Suppress be denied. The Court now considers de novo Defendant's objections to Judge Reardon's Report and Recommendation.

## DISCUSSION

First, Defendant objects to Judge Reardon's finding that "Officer Mumma reasonably suspected that Defendant did not stop at the red light on 34th Avenue, in violation of Anchorage Municipal Code ("AMC") § 9.14.040."[49] Defendant maintains that the Government's Exhibit D-2, which is a recording of a video taken from the dash camera of Officer Mumma's patrol car as he approached the intersection, "clearly shows in real time Mr. Haynes' vehicle enter the roadway through the referenced intersection and at a speed *much slower and deliberate* than what the officer's testimony described."[50] Further, Defendant contends that Defense Exhibit D-5 and related exhibits show that Defendant could have legally stopped at the intersection and Officer Mumma's view of Defendant's car was

---

[48] Docket 20 at 1.

[49] Docket 49 at 1-2 (quoting Docket 46 at 9).

[50] Docket 49 at 2 (emphasis in original).

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 8 of 15

Case 3:25-cr-00057-SLG-KFR    Document 52    Filed 07/06/26    Page 8 of 15

blocked such that he could not observe whether Defendant had stopped at the red light before turning onto the roadway.[51]

The Court has reviewed the video recording and agrees with Defendant that Officer Mumma's view was more likely than not blocked by a concrete barrier such that Officer Mumma would have been unable to see whether Defendant legally stopped at the intersection before turning onto Boniface.[52] Therefore, the Court SUSTAINS Defendant's first objection and REJECTS the conclusion in the Report and Recommendation that Officer Mumma reasonably suspected that Defendant did not stop at the red light before turning onto Boniface.

Next, Defendant objects to Judge Reardon's finding that "Officer Mumma reasonably suspected that Defendant failed to yield to oncoming traffic as he turned right at the intersection, in violation of AMC § 9.14.040."[53] He again contends that the video recording showing Defendant's entry onto the roadway demonstrates that Defendant did not fail to yield because Defendant "did not cause

---

[51] Docket 49 at 2.

[52] While it may be true that Officer Mumma could see more than what is depicted within the frame of the video recording, *see* Docket 46 at 9 n.80 (finding that Officer Mumma testified that the dashcam was mounted about two feet to the right of where he was sitting and he was able to see more than what was captured on the dashcam), the Court disagrees with Officer Mumma's conclusion that Defendant "could not have been a complete stop and then one second later been at that speed pulling into the intersection" because the video recording shows that Defendant was driving rather slowly as he made the turn into the intersection. Docket 35 at 69.

[53] Docket 49 at 3 (quoting Docket 46 at 9-10).

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 9 of 15

an accident, require officer Mumma to swerve or take evasive action, or otherwise render the circumstances unsafe."[54]

Under AMC § 9.14.040.A.3.a.ii, a vehicle stopped at a red light at an intersection "may, after stopping, cautiously proceed to make a right turn," and in doing so "shall yield the right-of-way to any other vehicle . . . lawfully within the intersection . . . at the time the signal is exhibited." The Court's review of the video recording shows that Defendant failed to yield to Officer Mumma's approaching car. Further, while it is more likely than not that Officer Mumma's view was obstructed such that he could not see if Defendant came to a lawful stop at the crosswalk line before turning right at the intersection, there was a clear line of sight between Officer Mumma's patrol car and Defendant's car as Defendant proceeded into the intersection such that Defendant should have seen Officer Mumma's approaching vehicle and yielded. As such, the Court OVERRULES Defendant's objection to Judge Reardon's finding that Officer Mumma reasonably suspected that Defendant failed to yield in violation of AMC § 9.14.040.

Defendant also objects to Judge Reardon's finding that "Officer Mumma credibly testified that by the time he decided to conduct a probation search, several factors led him to believe that Defendant might be impaired," particularly that "Defendant was sweating 'profusely' from his nose."[55] In Defendant's view, Officer

---

[54] Docket 49 at 3.

[55] Docket 46 at 12; Docket 49 at 3-4.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 10 of 15

Mumma's testimony on that point "is directly contradicted" by the video footage captured by Officer Mumma's bodycam.[56]

The Court has reviewed the video footage from Officer Mumma's body camera and while the Court would not characterize Defendant as sweating "profusely," it does appear that there is a sheen of sweat on Defendant's nose and it was noticeable enough to Officer Mumma that he asked Defendant about it while conducting the traffic stop. As such, the video does not directly contradict Officer Mumma's testimony.

Defendant alternatively argues that "[e]ven if a person was sweating while driving on a muggy July Alaska summer night, that fact does not correlate to a conclusion that the person has been drinking."[57] But Judge Reardon based his finding that "Officer Mumma reasonably inferred from his observations that Defendant might be impaired" on considerably more than Officer Mumma's observation that Defendant was sweating; the officer relied on four additional observations in reaching his conclusion: "(1) Defendant committed multiple moving violations before he pulled over to the side of the road, which was particularly suspicious to Officer Mumma given the 2:00 a.m. hour; (2) Defendant's breath smelled strongly of alcohol; (3) Defendant appeared to have recently sprayed cologne inside the sedan to mask the smell of alcohol; . . . and ([4]) Defendant had

---

[56] Docket 49 at 4.

[57] Docket 49 at 4.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 11 of 15

some trouble understanding and performing the two initial field sobriety tests that Officer Mumma administered."[58] The Court therefore OVERRULES Defendant's objection to Judge Reardon's reliance on Officer Mumma's testimony that he observed Defendant sweating during the traffic stop.

Lastly, Defendant objects to Judge Reardon's finding that "Officer Mumma's cumulative observations gave rise to a reasonable suspicion that Defendant had committed a DUI, particularly given Officer Mumma's training and experience."[59] The cumulative findings on which Judge Reardon relied are those recounted above: Defendant committed several traffic violations; Defendant's breath smelled of alcohol; Officer Mumma believed that Defendant has recently sprayed cologne; Defendant's nose was sweating; and Defendant had some trouble understanding and completing two initial field sobriety tests. In Defendant's view, the dash camera and body camera recordings show that Officer Mumma's testimony as to these observations "was *not* credible."[60]

As discussed above, the Court overrules Defendant's objections to Judge Reardon's conclusion that Officer Mumma reasonably suspected that Defendant failed to yield in violation of the Anchorage Municipal Code and his reliance on Officer Mumma's testimony that Defendant was sweating from his nose. As for

---

[58] Docket 46 at 12.

[59] Docket 49 at 4 (quoting Docket 46 at 11-12).

[60] Docket 49 at 4-5 (emphasis in original).

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 12 of 15

the other observations by the officer on which Judge Reardon relied, the Court finds that the videos do not contradict Officer Mumma's testimony and, apart from alleging that Officer Mumma's testimony that he smelled both cologne and alcohol "smacks of a testimonial 'observation' of an experienced officer who knows such a claim cannot be verified or dispelled during later testimony," Defendant offers no evidence to contradict Officer Mumma's testimony on that point. As such, the Court OVERRULES Defendant's objection to Judge Reardon's finding that "Officer Mumma's cumulative observations gave rise to a reasonable suspicion that Defendant had committed a DUI."[61]

As a final matter, the Court notes that in his conclusion of his objections, Defendant includes the following sentence: "Even if the Court finds otherwise, suppression must nevertheless be granted as Officer Mumma's delay and prolonging of his traffic stop in order to conduct a probation search was in clear violation of *Rodriguez* and Mr. Haynes' 4th Amendment rights as such prolongation was not based on independent reasonable suspicion of other law violations."[62] This sentence is Defendant's only argument on that issue; it is found in the conclusion of Defendant's objections; and it was not included with Defendant's other explicit objections in the body of the filing.

---

[61] Docket 46 at 11-12.

[62] Docket 49 at 5-6.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 13 of 15
Case 3:25-cr-00057-SLG-KFR    Document 52    Filed 07/06/26    Page 13 of 15

Pursuant to Federal Rule of Civil Procedure 72(b)(2), "a party may serve and file specific written objections to the proposed findings and recommendations." The Court finds that this single sentence is not specific enough to warrant de novo review of Judge Reardon's finding that "[b]ecause Officer Mumma had a reasonable suspicion to believe that Defendant had committed a DUI, the extension of the traffic stop and performance of a probation search did not violate the Fourth Amendment."[63]  Even if this single sentence constituted a proper objection, the Court would overrule it, as Defendant does not point to anything specific that undermines the analysis in Judge Reardon's Report and Recommendation as to this issue.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation at Docket 46 is **REJECTED** in part and **ADOPTED** in part.  As to those portions of the Report and Recommendation to which no specific objection was made, the Court agrees with the Magistrate Judge's analysis.  On de novo review of the objections to the Report and Recommendation, the Court rejects Judge Reardon's conclusion that Officer Mumma reasonably suspected that Defendant failed to properly stop at the red light before entering the intersection and turning onto Boniface.  The Court overrules Defendant's other objections as set forth above.

---

[63] Docket 46 at 14.

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 14 of 15

Because Officer Mumma had reasonable suspicion that Defendant failed to yield in violation of AMC § 9.14.040 and thereafter developed a reasonable suspicion that Defendant had driven under the influence, Officer Mumma's traffic stop of Defendant and completion of a probation search did not violate the Fourth Amendment.  As such, Defendant's Motion to Suppress at Docket 19 is **DENIED**.

DATED this 6th day of July, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:25-cr-00057-SLG-KFR, *United States v. Haynes*
Order on Report and Recommendation on Motion to Suppress
Page 15 of 15
Case 3:25-cr-00057-SLG-KFR    Document 52    Filed 07/06/26    Page 15 of 15